My name is Michael Connealy and I'm here on behalf of Southwest Airlines. The court should vacate the arbitrator's award in this case because it is contrary to the unambiguous language in the party's collective argument. The underlying dispute here is about whether the union's grievance was timely. This is a grievance challenging Southwest's practice of contracting out certain aircraft cleaning work to non-union members. This is a practice Southwest has had for decades with the union's full knowledge. The arbitrator decided that the grievance was timely, notwithstanding the 10-day deadlines set out in the agreement. On the theory advanced by the union, that the party's new collective bargaining agreement reset those deadlines. And he identified this as the key question in his analysis. What is the date when the current CBA became effective and enforceable? And that's from his decision at page 760 of the record. He determined that the agreement took effect when it was signed on March 16, 2016. And that conclusion is contrary to the clear language in the agreement. Article 29 of the agreement could not be any clearer. It says this entire agreement shall remain in full force and effect as of the date of ratification through and including February 18, 2021. Also, let me ask you, obviously, the language is there and very much in your favor. Arbitrator's decision to the extent is based on findings of fact, even implied, is pretty much beyond our reach. It's not much within reach regardless. Is there any suggestion, I want to hear from the other side as well, as candid as you can be, that there was an implied fact finding by the arbitrator that the signing date indicates, and it's the only indication of when the company agreed, since paragraph whatever it is, at the beginning of the agreement says that it becomes effective upon agreement of the company and ratification. I think you're referring to Article 3 that says the agreement becomes effective. I am. Article 3A. When it is accepted by the company and ratified by the union. And there is not a word in the arbitrator's opinion on this that you would accept. Was something presented to him? No. Whatever was presented to the arbitrator, was there any effort by the union to say that it wasn't agreed to by the company until the signature date? The union didn't make that claim. I'm sorry. The union did make the claim. But all of the evidence presented to the arbitrator refuted it. And that starts with the company's undisputed payment of increased wages pursuant to the new terms in the agreement as of the pay period that immediately began after ratification. Let me ask you about the document itself. Is there evidence of when this document with these dates on it, February 19 or whatever it is, to a similar date the following year, when was that prepared? I'm trying to see if the very fact of the existence of the agreement presented to the arbitrator showed that Southwest had agreed to it by then, or was the agreement by Southwest potentially after the February 19 date? What do we know about the document itself and the dates that appear and why those are the dates? Or is that just the first date after the expiration of the previous CBA? Did the previous CBA expire on February 18? Under the Railway Labor Act, collective bargaining agreements do not expire. They become amendable, and that is a date certain on which the parties can agree to new terms. And so in practice, the parties will leave most of the agreement in place and then will negotiate amendments to the previous agreement. And so my understanding is that the document actually comes together after both sides have accepted it, the company accepting it at the negotiating table and the union's members voting on it at ratification. But most of those provisions just remain unchanged. So the document that we see, whatever exhibit it is, would have come into existence and those dates would have appeared after the ratification by the union. That is my understanding. But as we pointed out in front of the arbitrator, there was no dispute from either side that after ratification, no changes could be made without a new written agreement from both sides, and that's at page 640. So what was the point of having the execution page? The execution page was there for ceremony. There was a, as often happens, there was a photo opportunity from both sides, and if you look at the execution page, you'll see there are 15 blank signature spots because this is clearly not, you don't need 15 people to sign this agreement for it to take effect, but there's a lot of ceremony involved in a new collective bargaining agreement. I guess my concern is, I mean, you know the standard well. As long as the arbitrator's decision comes from the essence of the contract, we have to uphold it. We can vacate it or should vacate it if he is sort of picking out of the air his own sense of what's right and what the just result is. And here, I mean, whether it's right or wrong, he does point to the contract in saying there's this execution page with a March date, and that's what I'm going to rely on. So even if that's wrong, isn't it coming from the contract as opposed to pulling something out of the air? Well, I don't think so, Your Honor, because the execution page is not an operative provision. There's nothing on the page that suggests anything about effectiveness. The only thing it says is sign this 16th day of March, 2016, and then there are blank spaces to be signed. But is it crazy to think that has some purpose to it besides ceremonial? It is when Article 29 says that the agreement takes effect as of the date of ratification. Even under this court's narrow standard of review, when the agreement says that and the arbitrator concludes that the agreement takes effect as of a different date, that is contradicting the terms of the agreement. And, in fact, more than that, the arbitrator ignored Article 29 because it doesn't make any appearance in his written opinion, and he does not even list the beginning of his decision as a relevant provision in the document. You're not arguing that the failure of the arbitrator to articulate some reason is itself fatal, some reason for not giving more weight to that section? No, I don't think that the arbitrator is obligated to explain his reasons. I think the case law is very clear on that. But the arbitrator's decision can still not be a disregard or cannot create a conflict with unambiguous language in the contract. And that's what we have here, both in Article 29 and, if there were any doubt, the cover of the agreement, which says that it is for the period February 19th, 2016, which I'll agree was the date of ratification through February 18th, 2021. Everyone's focused in the briefs in your argument on the effective date of the contract, and I understand that's because the arbitrator sets it up that way. But if you look at the actual 10-day deadline, which is ultimately what's at issue, the contract says provided such appeal is presented within 10 working days after receipt of the station manager's decision. So, I mean, nothing says it's 10 days from the execution date or the ratification date. It's sort of this ambiguous issue of how do you apply the station manager's decision to a new contract. I mean, your argument might be a new contract doesn't even get you to restart the clock. Right, but you're not raising that here. But, I mean, I don't see anything. It's not like there's something that says it has to be filed within 10 days of ratification or even of when the contract becomes effective, right? That is true, but that is because we believe the arbitrator erred in concluding that the grievance deadline reset upon the new agreement to begin with, whether it was ratification or some other date. We think that as the union's president actually testified at the hearing that the provision that Your Honor mentions requires 10 working – starts with 10 working days from the date at which the union becomes knowledgeable of the incident. Which was years before. Correct. But you're not arguing that as a ground to vacate here. No, and it's because we understand the standard of review here is very narrow. And, you know, whereas that provision might suggest multiple readings on this very point, we think we had the right reading at the arbitration hearing. But we understand that it's a murkier issue than interpreting Article 29, which in our view could not be clearer. So in addition to the points that I mentioned before about when the increases took effect, which was before signing, which shows that the company had accepted the terms before signing, we also pointed out in the arbitration hearing that – sorry, in our post-arbitration briefing, the point we make in our briefs here, that labor law is very clear that a signature is not required for an employer to be bound by a collective bargaining agreement. And that's at page 619 and 639 of the record. You gave an example of how the company accepted it by its actions. Is there anything in the record that shows the union did? The ratification was unquestionably the union's format. Well, I know the ratification, but I mean anything acting under the new agreement. I'm not sure of any – I'm not aware of anything off the top of my head that demonstrates the union's specific actions taken under new terms. Well, equivalent to what the company did to show it was acting under the new one? Well, apart from doing what our employees do every day, which is – But that's old. But there was nothing else that comes to my mind that was a clear-cut change in what was required of the union members upon the new agreement. But their assent is certainly evident from other things in the record, such as a frequently asked questions page that the union circulated to its membership, explaining the terms of the – some of the key terms, especially from the members' point of view, of the new tentative agreement. And that was prepared in January of 2016, so before ratification, and the court can find that at page 876 of the record, which shows that the parties had a meeting of the minds, which is how this process always works, before the agreement goes out to the union's members for ratification. It would make no sense for the union to hold a vote amongst its entire membership on terms that don't yet have the company's acceptance. But going back to Judge Southwick's question about whether, under the standard of review, the court can infer what is not made express in the arbitrator's decision, namely that maybe the company didn't accept the terms of the agreement until signature, I think that under the court's decision in the BNSF case that we cite in our brief from 2008, there the court remanded the case back to the arbitrator because the key question in granting relief to the union members was whether there was a causal connection between an increase in subcontracting by the company and furloughs of the union employees. And the court didn't ask, well, can we discern from the facts that were presented to the arbitrator or the facts presented to the court whether that causal connection was established? Instead, noting that the parties bargained for the arbitrator to decide questions like that, because the arbitrator had not done so in that case, it sent the case back, essentially, to the arbitrator to make that decision in the first instance. So here, even if the court thought that there was some uncertainty about either the arbitrator's decision or the evidence, we would submit that the only thing that the court should appropriately do is have the arbitrator decide the question in the first instance. Here, of course, we don't think that there's really any dispute about this, and the arbitrator himself noted, again at page 760, that by the time the agreement went out for ratification by the union, the items had already been negotiated. That was the word he used. And I think that's a realization of what I think should have been undisputed, that the company had accepted the terms by the time of ratification. And if the company had then said, we're not going to sign this agreement, the union would have had a good case under a longstanding Supreme Court case law that that was an unfair labor practice and it could have brought a suit against us. And that was the rationale that the Eleventh Circuit gave in the Deauville case that we cite in concluding and rejecting an argument that a collective bargaining agreement was not effective in between the ratification by the union and the signature by both parties because on that theory, ratification by the union is at most a counteroffer to the company, that the company can then accept or reject. But that goes against this case law that I mentioned going back to the Hines decision by the Supreme Court in the 1940s that says the company, once it has manifested assent to the terms of an agreement, and once that agreement has been ratified as required by the agreement, the company cannot at that point back out. And the court even said that in such circumstances, signing is nothing more than ministerial, and we submit that that is exactly the situation here as well. I think Article 29 speaks for itself, but another piece of evidence that it is really unambiguous here is that in its first submission, written submission to the arbitrator, this was before the hearing when we moved to dismiss the grievance on timeliness grounds, the union, I guess in the slip of the pen, actually used the ratification as the triggering date for the 10-day deadline. This is at page 614 of the record. But the union was under the misimpression that ratification occurred on March 16, 2016. And then when the union realized that that was when signing occurred, not ratification, it changed its theory for the hearing and in the post-argument briefing. So we would suggest that Article 29 really couldn't be clearer. It decides this case all on its own. You don't need to look at extrinsic evidence because between that and the undisputed fact of when ratification occurred, we know that the cover is correct. February 19th was the start date. And if the court has no other questions, I will be back at rebuttal. All right. Good afternoon, Your Honor. May it please the court. My name is Adam Greenfield, and I'm proudly here representing my client, Local 555 Transport Workers Union, AFL-CIO. Today we are seeking to affirm the lower court's decision, which ultimately affirmed the arbitrator's decision, that the grievance by Local 555 was timely and that this matter should be remanded for a hearing on the merits of this case. I think Your Honor, Costa has pointed to the exact issue we're dealing with today, that the court will review today whether or not the arbitration decision is drawn from the essence of the collective bargaining agreement regarding his decision that Local 555 timely filed its grievance. I think it's important to note that while we are under a de novo review here, the court has steadfastly over decades held a deferential and extremely narrow review of arbitration decisions. This court specifically, with Your Honor Weiner on the panel in Continental Airlines, held that even if you disagree with the interpretation that the arbitrator had of the contract, and even if you believe that serious error occurred in his decision, you should not overturn that opinion as long as it draws from the essence of the contract. If we turn to the arbitrator's decision under that lens, he issued an extremely lengthy 38-page decision, spending numerous pages on the issue of timeliness. And I think part of the decision by Honorable Judge Fish addresses that perfectly, and he says that it was immediately apparent that Arbitrator Jennings carefully dissected the arguments by both sides on the issue of timeliness. And within that opinion of Arbitrator Jennings, he does address Article 29. He does address other articles within the agreement. And he addresses other extrinsic evidence, which I don't think – I think has actually moved towards whether the decision was – comes from the essence of the contract. Opposing counsel adamantly says that Article 29 is dispositive on this matter and tells us where we need to go. And I do not think that is the case, respectfully. Article 29 actually is titled Duration and Amendments. I think the more appropriate article to look to if you're wanting to find grounding in the contract comes from Article 3, which is entitled Status of the Agreement. And within that article, as we have heard previously and has been discussed previously, the – it is expressly understood and agreed that when the agreement is accepted by the company and ratified by the union, which I would agree – which I would believe is where Arbitrator Jennings finds the basis for turning to acceptance by signature, offer acceptance signature. It's a basic contract law. That is drawing your decision from the essence of the contract. Where does the contract say you restart the time period for any possible violation when the agreement goes into effect? I don't believe it specifically addresses that, but I think a better frame to look at it in may be from the standpoint that, as was discussed, the nature of the RLA is that agreements go on and they continue even during negotiation periods. Now, this issue extended ten years – a decade back as to whether the contracting out of this work of remote overnight aircraft could go to third-party contracts or if it needed to go straight to the union. There was an issue of res judicata and of whether that could be raised. That's not being raised here today. It was raised in the lower court, but it's not before us today. I would also contend that if we're looking at the matter from an issue of public policy, we're dealing with a preliminary issue of timeliness. We're not even deciding whether this is going to be – the merits of this matter. We're just asking that it be returned back to. And I think allowing Southwest Airlines and in the future anyone to challenge an arbitration agreement on this timeliness, I think it really pushes back against the underlying speed, cost reduction, and efficiency of what arbitration is intended to be. Let me ask you to hone in for me just a bit on the importance of the date. It's not before us, as you just addressed, whether Southwest Airlines might be correct at the start of a new agreement, a revised agreement in no way gives you additional rights to bringing agreements based on much older contracting decisions. But the argument presented to the arbitrator that was accepted is that the start of a new agreement does, or at least potentially, give you that right. I don't know how much of that's been resolved. And so that is a necessary component of you ever having any success in this matter if we do remand it for further proceedings in the arbitrator. And we don't – we hold that it wasn't unduly – it wasn't delayed. If that's true, then why isn't the language in 29 that says this entire agreement shall remain in force as of the date of ratification? Control it, regardless of what to make of the signature page or whatever else, regardless to make of any other way to look at what that signature page might have done. If what you need is to start a new agreement, doesn't this say as clearly as it can be said that this agreement, it says remains, but nonetheless, as of the date of ratification, and we know what that date is? Yes, Your Honor. I agree with you from the standpoint that Article 29 is evidence that would point to – Why is it evidence when you say this agreement starts on the date of ratification? Well, I believe it's talking about the duration of the contract. Well, as of the date of ratification. I would contend that the Article 3 is actually the controlling proposition that is actually titled the status of the agreement. So what are you really telling me? It's ambiguous? I would contend, Your Honor – Is that what you're not saying, but that's what you mean? There are persuasive arguments, and I think Southwest has made several of those, and I think there are persuasive arguments to be made. However, that's not what's fully – Compelling arguments is what Judge Fish said. I find them compelling. Yes, Your Honor. Absolutely. Compelling is fair, but as long as the arbitrator's decision came from the essence of the contract – But he can't ignore the agreement. Don't you agree that he can't ignore plain language of the agreement? And so you need an ambiguity? Is it enough just that he found something in the agreement? It has to be something that, in fact, could be a basis to rest – no matter how compelling or not compelling – to rest the decision. It's not just enough for him to say, Signature Page, that's part of the agreement. You can't touch my decision. Would you agree with that, that we must find ambiguity or something that would allow his decision, whether we agree with it or not, to stand? Yes and no, Your Honor. And I think Southwest correctly points out that it would take a complete disregard of the CBA. And I would contend that Article 3 proposes that acceptance is required by the company. And Southwest has provided no evidence that the signature pages are ceremonial. In fact, if you look at the signature pages, there's multiple signature pages that include what are called side letter agreements. Those actually can be added in afterward. The union has voted on ratification as long as they're not dealing with a diminution in benefits. So the contract could have still been adjusted from that standpoint. Was there any evidence presented to the arbitrator that gave significance to the signature page? Is this potentially a fact-finding based on some evidence of the signature page potentially being the start date? It does not. Arbitrator Jennings did not provide specific reasoning. Well, but did he have evidence? I mean, I was asking what was presented to him. Was there anything in the record before the arbitrator that could have been a factual basis to give significance to that date of March, whatever it is? Yes, I would believe that Article 3 was discussed, and I think acceptance and ratification can lead to that. And if we look at the executome case decided by this court, you're only supposed to – the court is only supposed to look at the results reached by the arbitrator and not necessarily his underlying reasoning as long as it's not in the essence of the contract. Do you agree that if this had been a district court, it would be an easy reverse? If this matter was not – Now, is that a fair question? Go ahead, please. Well, but that leads me then to ask on the difference between our reviewing a district court and an arbitrator. When you have this arbitrator fails to account for the title page that sets February 19th through February 18th of 2021 as a period that Article 29's language shall remain in full force and effect of the date of ratification, including February 18th, 2021, that one-time bonus paid to employee working under the CBA as of the date of ratification and the party's conduct in paying the increase rate after it was ratified, how do we disregard that disregard of the law by the arbitrator? Yes, Your Honor, and I would, I guess, initially say that I think Judge Fischer probably made himself clear how he would have decided if it was before and not from an arbitrator originally. When it comes to the title page in Article 29 that you're talking about, it's talking about the duration of the contract. It's not talking about the status of the contract, which is governed by Article 3, the duration of the contract. As we all know, contracts can be agreed upon and have dates that are retroactive. But that covers duration. Duration means when does it start, when does it stop? Yes, Your Honor. And the duration can be retroactive, whereas the actual signature and signing an acceptance, which is the acceptance that you find in Article 3, that language, the acceptance, then triggers that ten-day window of when it needs to be heard. And I would further say that on that issue of public policy, at the latest, we're talking about the 20-day versus a 10-day hearing of this matter. And I don't believe that the underlying idea of arbitration is supported by mincing over timeliness issues when we're talking about something when we haven't even reached the merits of the argument. All we're talking about is whether it should be heard. It seems to me that timeliness is where this issue has been resolved many times in the past for whatever reason, which seems a little surprising. But nonetheless, here we are again. One of the things offered probably unwillingly on the other side as something for the court to consider is sending this back to the arbitrator. What's the law on that? Why is that, in your view, no doubt inappropriate? Well, the district court decided that it actually should be remanded to a different arbitrator. And we have not pushed back on that. Well, for the merits. But I'm talking about on this, what's been resolved so far. On the issue of timeliness. I would contend that that is a preliminary issue. I don't know that . . . Would it be improper under procedures relevant to the Railway Labor Act or just improper in this case because there's no need for it? Or you can give me another answer. It doesn't have to be those two. And maybe I can seek some clarity, Your Honor. Are you talking about remanding it to the arbitrator Jennings who heard the case? Yeah, for a better explanation of what in the world was he relying on to reach this decision. I'm sorry? For a better explanation of what he was relying on to reach the decision that he did. Yes, Your Honor. Arbitrator Jennings does, at length, spend time discussing everything from ratification . . . Okay, you give me why it doesn't make any sense to do it here. What I'm asking, though, is there anything inappropriate under the arbitration procedures of the Railway Labor Act, on the case law of that act? I guess there's a period there somewhere. Is there anything inappropriate about doing that just as a matter of law? As far as remanding it? The same issue, remanding it to the arbitrator for further review and analysis. I believe Your Honor has the ability to do that. The district court also has wide discretion in the ability to do that. And I apologize, but maybe I'm not understanding you. Well, it sounds like you are. That's fine. I believe that is a remedy that could be done. But when we're talking about overturning an arbitration decision, I think we ultimately still fall back to this deferential view of how things were decided. And as long as it comes from the essence of the contract, even if that is not fully explained in the arbitrator's decision via the executome decision of this court, we only need to look at the results that would reach. And I think by looking at Article 3, we can find the language of acceptance and ratification. Acceptance and ratification, which then leads us to saying for acceptance, we need a signature by the company. And as I stated before, Southwest has no evidence that signatures are ceremonial. Is that your argument? You don't have to use all your time? Yes, Your Honor. Your Honor, I will return this time to you. And as a Texan, I appreciate your moment of silence for present questions. Well, thank you. If I may begin just where Your Honor left off. We don't think it would be appropriate to send this back to Arbitrator Jennings because Arbitrator Jennings has been removed from the panel of arbitrators. That was the subject of a grievance, a totally separate grievance here, and the removal was upheld by the arbitrator in that grievance. And I think that is part of why Judge Fishbelow did not send the merits part of this grievance back to Arbitrator Jennings because he's no longer on the panel. Well, it seems to me the purpose of what I was suggesting is to have the arbitrator who wrote this decision explain better how he got to this point. And it seems to me that if he is not a person to whom this could be sent, it doesn't make any sense to give it to somebody else. That just gives you a do-over in front of a new arbitrator, and I don't think the union should be subject to that. But anyway. And we would submit that a remand is not necessary. Well, you both think that. Right, because the agreement is clear enough on its own, within its own four corners. And I would just note that Article 3 does not say acceptance by signature. That is adding a term to Article 3 that is not there, and Article 20 makes clear that the arbitrator has no power to change, add to, or delete the agreement's terms. And basic contract law—I hate to contradict my colleague on the other side—but basic contract law does not govern the formation of collective bargaining agreements. That is a matter of federal law. The Mack Trucks case that we cite from the Third Circuit says this expressly, that contract formality doctrines do not apply to the formation of collective bargaining agreements. And we believe that's consistent with this Court's decision in Savant as well. But to the extent you were to look at basic contract law here, it would strongly favor not interpreting Article 3 to produce a contradiction with Article 29, which is what the union's position would require, setting aside the fact that it would also produce a contradiction with background federal labor law. And that is why we think it is a radical interpretation of this agreement and not sufficient basis to defend the arbitrator's decision, notwithstanding the standard of review. And the union president, Mr. Perisky, in his deposition in this case, reads Article 3 the way we do. This is at page 819 of the record. He was asked about Article 3 specifically. So this provision of the CBA says that it will be binding on all parties when it is ratified by membership of the union, correct? That's what it says. And that is because, as the phrasing of Article 3 itself suggests, acceptance by the company invariably predates ratification by the union. And we submit that that's what happened here. One comment about the essence of the agreement standard of review and the notion that only a complete disregard of the CBA justifies a vacatur. We think that the court's decisions in cases like Baird in Continental Airlines v. Teamsters, the 2004 Continental Airlines case, make clear that even if you cite the language of the agreement, if what the arbitrator concludes is irreconcilable with the language of the agreement, the arbitrator is not applying or interpreting the agreement but rewriting it. And even under the Railway Labor Act's narrow standard, that is not appropriate. Finally, on public policy, as the court might suspect, the timeframe provisions in this agreement are of great importance to both sides in the relationship, and they are often raised as a defense or as a reason to reject a grievance. At the threshold stage, in Article 20, Section 1, Paragraph E, says determination of timeframe issues. If I may just complete this sentence. Determination of timeframe violation issues shall take precedence over consideration of any other issue. We would ask the court to reverse the district court's judgment and vacate the arbitration award. All right, then. Thank you both. Both have helped us understand this case somewhat better.